UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Andrew Broady and Forever Music
Productions, LLC,
    Plaintiff

v.

Larry Hoppen and Lance Hoppen,
Individually, and doing business as
Orleans, and Thomas Kallman,
    Defendants

Case No. 12-cv-79-SM
Opinion No. 2012 DNH 132

**O R D E R**

Plaintiffs, Andrew Broady and Forever Music Productions, LLC
("Forever Music") are in the business of music promotion and
marketing.  For several years, they operated a website called
"Rock and Pop Masters" (RPM"), through which they promoted
classic rock and pop musicians.

From 2005 until 2011, plaintiffs secured performance
contracts and provided promotion services for musicians Larry
Hoppen[1] and Lance Hoppen of the rock and roll band Orleans.  The
relationship soured sometime in 2011.  Broady and Forever Music
brought this suit against the Hoppen brothers and Orleans, and
against Thomas Kallman, their booking agent, alleging trademark

---

[1] A suggestion of death as to Larry Hoppen was filed July 30,
2012 (doc. no. 37).  To date, no motion for substitution of party
under Fed. R. Civ. P. 25(a)(1) has been filed.

infringement under the Lanham Act, 15 U.S.C. §§ 1117, breach of contract, unjust enrichment, promissory estoppel, tortious interference with contractual relations, and conversion.

Pursuant to Fed. R. Civ. P. 12(b)(2), defendants move for dismissal of this suit for lack of personal jurisdiction.

### Standard of Review

When personal jurisdiction is contested, "the plaintiff bears the burden of proving that jurisdiction lies in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). Where no evidentiary hearing is held and the court "proceeds upon the written submissions," the plaintiff "need only make a prima facie showing that jurisdiction exists." Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law, 787 F.2d 7, 8 (1st Cir. 1986) (quotation omitted).

Assertions of jurisdictional fact are construed in the plaintiff's favor. Buckley v. Bourdon, 682 F. Supp. 95, 98 (D.N.H. 1988). Nevertheless, in order to defeat a defendant's motion to dismiss, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record. See Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 979 (1st Cir. 1986).

**Discussion**

Defendants argue that plaintiffs have not asserted "specific facts" which would permit the exercise of personal jurisdiction over them within the State of New Hampshire.  Plaintiffs object. They argue that numerous documents and their amended complaint — which is verified and, therefore, operates as an affidavit[2] — demonstrate that New Hampshire has both general and specific jurisdiction over all three defendants.

I.  <u>General Jurisdiction</u>

"General jurisdiction may be found in the absence of a relationship between a nonresident defendant's contacts with the forum and the cause of action where the defendant engages in the 'continuous and systematic' pursuit of general business activities in the forum state."  <u>Glater v. Eli Lilly & Co.</u>, 744 F.2d 213, 216 (1st Cir. 1984).  "Although minimum contacts suffice in and of themselves for specific jurisdiction . . ., the standard for general jurisdiction is considerably more stringent."  <u>Id</u>.  <u>See also</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984).

---

[2]  "A verified complaint signed under the pains and penalties of perjury is . . . treated as an affidavit" for purpose of deciding a motion to dismiss for lack of personal jurisdiction. <u>Provanzano v. Parker</u>, 796 F. Supp. 2d 247, 254-55 (D. Mass. 2011).

In evaluating whether general jurisdiction exists, courts must inquire into the "quality and quantity of contacts between the potential defendant and the forum."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001) (quotation omitted).  General jurisdiction exists if the contacts are "continuous and systematic" and the exercise of jurisdiction is "reasonable" in light of five "gestalt factors."  Id.

Here, the court need not reach the reasonableness prong of the general jurisdiction inquiry because Broady and Forever Music have not shown that defendants' contacts with New Hampshire were "continuous and systematic."[3]

Plaintiffs point to contacts the Hoppen brothers and Kallman had with New Hampshire from 2005 to 2012.  According to the verified amended complaint, Lance and/or Larry Hoppen

- performed five shows in New Hampshire over a six-year period;

---

[3]  The court also rejects plaintiffs' argument that defendants contractually consented to the general jurisdiction of New Hampshire.  Plaintiffs point to a forum selection provision — contained in various contracts negotiated by plaintiffs — which states that defendants consent to the jurisdiction of New Hampshire "in all disputes arising out of or relating to this Agreement."  Clearly, that consent is tied to claims arising from the contracts, and does not constitute consent to the general jurisdiction of the state.  Moreover, the contract alleged to have been breached in this case does not contain such a provision.

- attended at least four business meetings in the state (the exact number is unspecified);

- sent communications to plaintiffs in New Hampshire; and

- flew into Manchester Airport and stayed at Broady's New Hampshire residence for the nineteen shows they performed in New Hampshire and other New England states.

With regard to defendant Kallman, plaintiffs allege that he requested from Broady in New Hampshire certain DVD's "for sale and for promotional purposes," which Broady shipped to Kallman at his Florida address.  Am. Complaint, par. 21.


Under the clear weight of authority, such sporadic and insubstantial forum contacts do not subject defendants to general jurisdiction.  See e.g., Glater, 744 F.2d at 215-17 (although defendant advertised its products in New Hampshire, generated large sums of money in the state, and employed five non-resident and three resident sales representatives within the state, court held that contacts were not continuous and systematic); Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (finding that defendant British company was not subject to the general jurisdiction of Massachusetts even though it had regularly solicited business in Massachusetts and generated over $500,000 as a result of its forum contacts).

Aware, perhaps, that defendants' own contacts with New Hampshire are not enough to satisfy the stringent general jurisdiction, Broady and Forever Music seek to add "to the calculus of contacts," Elliott v. Armor Holdings, Inc., 2000 WL 1466112, at *11 (D.N.H. Jan. 12, 2000) (Barbadoro, J.), their own in-forum activities relating to the promotion of defendants' interests.  These activities, say plaintiffs, included negotiation of 108 contracts "on behalf of Larry Hoppen and Lance Hoppen as performers"; solicitation of business for the Hoppens via cold-calls and emails; the mailing of press kits with promotional materials; logistical preparations for the Hoppens' band performances; and the marketing, selling and shipping from New Hampshire of "hundreds of Orleans CD's, DVD's and downloads over a three-year period" using the RPM website.  Am. Complaint, doc. no. 23, pars. 9, 15, 19, 20, 23.  The amended complaint alleges generally that "[d]efendants were 'control' persons who directed [these] sales, marketing and contract negotiations in New Hampshire."  Id. at par. 9.

"To impute contacts of one entity to another, the court must assess 'the nature of the legal and institutional relationships between them.'"  Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246, 256 (D. Mass. 2006) (quoting Donatelli v. Nat'l Hockey League, 893 F.2d 459, 468 (1st Cir. 1990)).  Where a defendant

exercises "substantial influence" over an entity doing business in the forum state, those forum contacts will be imputed to defendant for purposes of general jurisdiction.  <u>Donatelli</u>, 893 F.3d at 469.

The parties disagree as to whether a simple agency relationship — which may involve something less or different than "substantial influence" — will suffice, at least for purposes of general jurisdiction.  That is an unresolved question in this circuit.  <u>See</u> <u>Daynard v. Ness, Motley, Loadholdt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 54-55 (1st Cir. 2002).  <u>See</u> <u>also</u> <u>Fiacco v. Sigma Alpha Epsilon Fraternity</u>, 2006 WL 890686, at *10 (D. Me. March 31, 2006) (noting that, under <u>Daynard</u>, the agency "approach should be questioned in the context of a general jurisdiction analysis.").  The open question, however, requires no answer in this case.  Assuming, without deciding, that plaintiffs need only show that they acted as defendants' agents (or that their actions were later ratified by defendants),[4] they have met that standard through "properly documented . . . evidentiary proffers," <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 145 (1st Cir. 1995), only as to their in-forum negotiation of six

---

[4]  Plaintiffs clearly have not shown "substantial influence." Many specific factual allegations in the amended complaint show independent decision-making by Broady and Forever Music on key business issues.

contracts on behalf of Lance Hoppen, Larry Hoppen, and Orleans.[5]
Moreover, even assuming that plaintiffs' additional forum
activities — logistical preparations, email and phone promotions,
and website sales — are attributable to defendants on an agency
theory, plaintiffs have not shown that these activities
constitute continuous and systematic contacts for purposes of
general jurisdiction.


    A.   <u>Contract Negotiations</u>

    With regard to the 108 contracts plaintiffs negotiated from
New Hampshire, the amended complaint states that, as to all of
them, the Hoppens "authorized the plaintiffs to execute the
contract[s] in their behalf."  Am. Complaint, doc. no. 23, par.
24.  But the court is not required "to credit [this] conclusory
allegation."  <u>Massachusetts School of Law</u>, 142 F.3d at 34
(quotation omitted).  Instead, plaintiffs must come forward with
"properly documented . . . evidentiary proffers" to support their
general assertion.  <u>Foster-Miller</u>, 46 F.3d at 145.  Plaintiffs
have submitted such evidentiary proof as to only six of the 108
contracts.  In addition, with regard to many of the contracts,
specific factual allegations of the amended complaint undermine
the general agency allegation.  Specifically:

---

[5]  There is nothing to suggest an agency relationship between
defendant Kallman and plaintiffs.

- The amended complaint states that thirty-two of the 108 contracts involved shows that "were contracted solely by FMP [Forever Music]," and for which the Hoppens were merely "subcontracted performer[s]."  Am. Complaint, doc. no. 23, pars. 25, 27.  No agency relationship as to these thirty-two contracts, therefore, is shown.

- As to seventy contracts, plaintiffs have not come forward with specific facts to suggest that they acted as defendants' agents with regard to their negotiation and formation.

- The remaining[6] six contracts clearly were negotiated by plaintiffs acting as agents for defendants.  Submitted as exhibits to the court, these six contracts explicitly list "Andrew Broady Forever Music Productions LLC" as "Authorized Agent" for "Orleans & Friends," "Orleans," and "Rock and Pop Masters."  See doc. no. 29-1.

In sum, the court finds that plaintiffs have made a prima facie showing that their New Hampshire activities relating to the negotiation and formation of six of the 108 contracts should be imputed to defendants.


B.   Logistics and Promotion Activities

As to plaintiffs' activities involving logistical preparations for defendants' shows, cold calls, emails, and the mailing of press kits, plaintiffs fare no better, but for a

---

[6]  The amended complaint is somewhat vague as to whether any or all of the six contracts were among the 32 referenced as having been "contracted solely by FMP."

different reason.  Even assuming that plaintiffs acted as
defendants' agents for all of these forum activities, there is
nothing in the record quantifying them (e.g., how many e-mails,
cold calls, mailings per week or month; over what period of time
specifically, etc.).  Plaintiffs have alleged these activities
only generally and submitted copies of only twelve emails.
Plaintiffs did not submit affidavits or additional documentation
providing more specifics.  The court cannot, therefore, determine
the "quality and quantity" of the alleged contacts.  Swiss Am.
Bank, 274 F.3d at 619 (quotation omitted).


        C.   Website Sales and Fulfillment

     Plaintiffs face a similar problem with regard to their
fulfillment, from New Hampshire, of website-generated sales of
defendants' CD's, DVD's, and downloads.  Again, even assuming
that they acted as defendants' agents for purposes of those
sales, the dollar amount of the sales appears insubstantial.  The
amended complaint alleges "hundreds" of sales over a three-year
period, but plaintiffs' own exhibit shows that most items cost
between $1.50 and $26.95.  The total dollar amount of sales
fulfilled from New Hampshire, therefore, is relatively small.
See generally Sevigny v. OM Group, Inc., 2006 WL 335414, at *5
(D.N.H. Feb. 13, 2006) (Barbadoro, J.) (quantity of in-forum
sales relevant to general jurisdiction inquiry).  See also

                            10

<u>Richards v. Tsunami Softgoods, Inc.</u>, 239 F. Supp. 2d 80, 85 (D. Me. 2003) (finding no general jurisdiction where defendants did only $75,000 in business in the state in most recent years).

At bottom, the activities undertaken by plaintiffs in New Hampshire that could be imputed to defendants are those relating to the negotiation and formation of six contracts; an unknown quantity of logistics and promotional activities; and insubstantial sales fulfillment.  Even when viewed in combination with defendants' own forum contacts (<u>i.e.</u>, five shows, four business meetings, etc.), these activities do not constitute continuous and systemic contacts with New Hampshire sufficient to subject them to the exercise of general jurisdiction.

Finally, and in any event, an additional, separate reason defeats plaintiffs' argument that general jurisdiction is established through their own forum activities.  As in <u>Elliot</u>, plaintiffs here have not shown that their decision to work from a New Hampshire-based office was anything but "a unilateral action" undertaken for their "'own convenience.'"  2000 WL 1466112, at *3.  There is no evidence, for instance, that defendants required plaintiffs to "set up shop" in New Hampshire, or that they "insist[ed] that [plaintiffs] perform any activities there."  <u>See PMH Research Assoc., LLC v. Life Extension Found. Buyer's Club,</u>

Inc., 2004 WL 2958671, at *4 (D.N.H. Dec. 22, 2004) (Barbadoro,
J.).


        Accordingly, the court finds that defendants are not subject
to the exercise of general personal jurisdiction in New
Hampshire.


II.  <u>Specific Jurisdiction</u>
        To establish specific jurisdiction, Broady and Forever Music
must make an affirmative showing of relatedness, purposeful
availment, and reasonableness.  <u>United Elec., Radio and Mach.</u>
<u>Workers of Am. v. 163 Pleasant Street Corp.</u>, 960 F.2d 1080, 1089
(1st Cir. 1992).  As to relatedness, they must demonstrate that
their claims directly relate to, or arise from, defendants'
contacts with this forum.  <u>Harlow v. Children's Hosp.</u>, 432 F.3d
50, 61 (1st Cir. 2005).  Because plaintiffs have not shown how
defendants' contacts with New Hampshire are related to their only
federal claim (the Lanham Act claim), the entire amended
complaint must be dismissed.


        A.   <u>Lanham Act Claim</u>
        In their first claim, Broady and Forever Music allege that
the defendants infringed their RPM trademark in violation of the
Lanham Act, 15 U.S.C. § 1051 et seq.  For purposes of specific

12

jurisdiction, trademark infringement claims "are analyzed as tort claims."  PFIP, LLC v. Planet Fitness Enter., Inc., 2004 WL 2538489, at *5 (D.N.H. Nov. 10, 2004) (DiClerico, J.).  A tort claim arises out of, or is related to, a defendant's forum activities where the contacts are both a "but for" cause and a proximate cause of the injury.  Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Assoc., 142 F.3d 26, 35 (1st Cir. 1998).

Here, as in Macri v. Macri, 2002 WL 826823, at *10 (D.N.H. May 1, 2002) (Diclerico, J.), "the plaintiffs' allegations and memorandum are conclusory and do not show that the defendants' contacts give rise to the tortious activities alleged."  Id.  At best, plaintiffs trace only a "but for" relationship between the forum activities and the alleged infringement.  They state:

> Plaintiffs' tort claims are based upon the theft and
> misuse of the RPM website and trademark and are
> likewise related to Defendants' in-forum contacts
> . . . .  The website was purchased by Plaintiffs from
> New Hampshire and used to generate business for the
> Hoppens and to market their products from New Hampshire
> . . . .  The tort claims involve the same parties, the
> same facts and the same business relationships.  But
> for the Defendants' purposeful in-forum business
> activities — individually and through plaintiffs as
> authorized agent — the injury would not have occurred.

Doc. No. 29, pg. 14.

In short, plaintiffs have failed to offer specific facts showing that defendants conducted forum activities "essential to"

the alleged infringement.  <u>PFIP, LLC v. You-Fit, Inc.</u>, 2009 WL

1121359, at *14 (D.N.H. April 27, 2009) (Laplante, J.).[7]  As to

all defendants, therefore, the Lanham Act claim is dismissed for

lack of personal jurisdiction.


    B.  <u>Remaining State Law Claims</u>

    Normally, the court would proceed to analyze whether the

remaining claims, all of which are brought under state law, are

related to defendants' New Hampshire contacts.  But dismissal of

the only federal claim in this case raises a subject matter

jurisdiction issue whose resolution eliminates the need for

further personal jurisdiction analysis.  Absent the federal

claim, subject matter jurisdiction must rest upon something other

than federal question jurisdiction, like diversity of

citizenship.  The amended complaint, however, does not establish

complete diversity between the parties.

---

[7]  Plaintiffs have not argued that the infringement is occurring
in New Hampshire by virtue of the defendants' operation of the
RPM website, which is accessible in New Hampshire.  But even if
they had pressed this argument, it is doubtful that they could,
at least on this record, show purposeful availment.  <u>See</u> <u>ICP
Solar Tech., Inc. v. TAB Consulting, Inc.</u>, 413 F. Supp. 2d 12, 19
(D.N.H. 2006) (finding defendant did not purposefully avail
itself of the privilege of conducting business in New Hampshire
where, among other things, its interactive website did not
generate sales to New Hampshire residents).

The first (and most obvious) problem with the amended
complaint is that it does not allege anything about the
citizenship (or even residence) of plaintiff Andrew Broady.  As
to plaintiff Forever Music, the amended complaint alleges that it
is a "New Hampshire limited liability corporation."  For
diversity purposes, however, "a limited liability company does
not have the citizenship of its place of formation or business,
but of each of its members."  PFIP, 2009 WL 1121359 at *1 n.1
(citing Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay
Marina, Inc., 435 F.3d 51, 54-55 (1st Cir. 2006)).  Because
plaintiffs have not pled the citizenship of the member or members
of Forever Music, "the court cannot determine whether [Forever
Music] is diverse from the" defendants.  Id.

With regard to the individual defendants, the amended
complaint alleges that Larry Hoppen, Lance Hoppen, and Thomas
Kallman, are "residing in" Tennessee, Florida, and Florida,
respectively.  "[A]llegations of residency," however, "are
insufficient to establish citizenship for the purposes of 28
U.S.C. § 1332(a) . . . ."  Heller v. Allied Textile Companies,
Ltd., 276 F. Supp. 2d 175, 181 n.5 (D. Me. 2003).  See also Bank
One, Texas, N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992)
("[C]itizenship or domicile, not residence, is the basis of
subject matter jurisdiction.").

And, because the amended complaint does not allege the
citizenship of the Hoppen brothers, it has not alleged the
citizenship of the business entity Orleans.  As with plaintiff
Forever Music, the citizenship of Orleans, an "unincorporated
association," is the "citizenship of its owners, partners, or
other principals."  <u>Meyerson v. Harrah's East Chicago Casino</u>, 299
F.3d 616, 617 (7th Cir. 2002).

### Conclusion

For these reasons, the Motion to Dismiss for Lack of
Personal Jurisdiction (doc. no. 28) is granted as to all
defendants on the Lanham Act claim.  The remaining claims are
dismissed for lack of subject matter jurisdiction.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 28, 2012

cc:  William E. Christie, Esq.
     Dustin M. Lee, Esq.
     Lynn A. Leonard, Esq.